NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CATHERINE T. RUSSO and ANTHONY T. RUSSO, | : : : : | Civil Action No. 12-2426 (SRC) |
| Plaintiffs, | : : : | **OPINION** |
| v. | : : : | |
| KESSLER INSTITUTE FOR REHABILITATION, INC, and KESSLER REHABILITATION CENTER, | : : : : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

     This matter comes before the Court upon the summary judgment motion filed by Defendants Kessler Institute for Rehabilitation and Kessler Rehabilitation Center ("Defendants"). Plaintiffs Catherine and Anthony Russo ("Plaintiffs") oppose the motion. The Court has considered the parties' submissions and proceeds to rule without oral argument. For the reasons expressed herein, the Court will grant summary judgment in Defendants' favor.

I.    BACKGROUND

    **A.  Facts**

    This case presents the personal-injury claims of an individual who fell during a physical therapy session. By way of background, in October of 2009, Catherine Russo ("Mrs. Russo") tripped over one of her grandsons, injuring her left knee and ankle. As a result, in April of 2010, Mrs. Russo began a course of physical therapy at the Kessler Institute for Rehabilitation ("Kessler"), which is located in Montvale, New Jersey.

On April 20, 2010, Kessler conducted an initial therapy appointment for Mrs. Russo.  On that day, Kessler employee Anna Liza Samson, PT ("Ms. Samson") completed an Outpatient Medical History and Screening form for Mrs. Russo.  The form contains a fall risk assessment, which identifies Mrs. Russo "as a fall risk," but which also provides that a fall-prevention program had not been implemented.  (Ex B. to Espey Cert., Kessler 60).

From April 21 through May 6, 2010, Mrs. Russo completed five physical therapy sessions under Ms. Samson's supervision.  Mrs. Russo did not exhibit difficulty in completing the physical therapy, and her symptoms appeared to improve throughout the sessions.  Ms. Samson observed Mrs. Russo to walk without any limp or restrictions.  By May 6 -- Mrs. Russo's final day of therapy -- Kessler had scheduled Mrs. Russo to be discharged.

In the late morning on May 6, however, Mrs. Russo fell as she completed a lateral step-up-step-down exercise ("the step exercise").  Specifically, Mrs. Russo asserts that as she took her right foot off of the exercise machine's platform, her left foot failed to hold her up.  She contends that she began to fall, and that there was no bar or safety device that she could grab onto for support.  Furthermore, Mrs. Russo recalls that Ms. Samson was the only employee in the room, and that when Mrs. Russo performed the step exercise, Ms. Samson went to the other side of the room to tend to another patient.  Mrs. Russo accordingly remembers that when she fell, Samson "had her back to [her]."  (See Espey Cert., Ex. D, 22:18-24:6).

Ms. Samson's recollection of the fall differs.  As reflected in a Kessler Incident Report, Ms. Samson asserts that Mrs. Russo was under "close supervision" while completing the step exercise.  (Espey Cert., Ex. C).  Ms. Samson further observed that the exercise step was next to a machine which does have a bar that Mrs. Russo could have held to stabilize herself.  Samson wrote that Mrs. Russo "accidently stepped down the wrong way in [a] backward fashion" and

"failed to hold on to the machine next to her." (Espey Cert., Ex. C).  Samson also disputes that she was on the opposite side of the room from Mrs. Russo; she says that she was next to Russo, and that she tried to grab her but the accident happened quickly.

As a result of the fall, Mrs. Russo broke bones in her right arm and wrist.  She underwent surgery for her injuries, and she received a plate and screws in her wrist.  She is now receiving no further treatment.

### B. Procedural History

Plaintiffs Catherine and Anthony Russo ("Plaintiffs") filed a Complaint against Defendants Kessler Institute for Rehabilitation and Kessler Rehabilitation Center ("Defendants") in this Court in April of 2012.  In the Complaint, Plaintiffs seek to recover under theories of:  (1) negligence; (2) negligent misrepresentation; (3) strict liability; and (4) loss of services.  This Court has subject matter jurisdiction over the matter pursuant to diversity between the parties.

Defendants answered in June of 2012.  Discovery commenced, and on January 7, 2014, Plaintiffs' expert, Richard Stoneking, authored a report on Mrs. Russo's fall.  In his report, Mr. Stoneking asserts that by failing to closely attend to Mrs. Russo, Ms. Samson failed to prevent or divert the fall.  Defendants' expert, David Bertone, PT, authored a report in March of 2014 which stated that Ms. Samson tended to Mrs. Russo in accordance with Russo's care plan.

On March 27, 2015, Defendants moved for summary judgment.  In support of their motion, Defendants argue that Plaintiffs have failed to produce expert testimony that Defendants violated an applicable standard of care, or that they caused Mrs. Russo's injuries.  Defendants further urge that Plaintiffs' negligent-misrepresentation claim lacks evidence, and that their other claims are legally deficient.

Plaintiffs oppose the motion for corresponding reasons.  They argue that their expert did identify the applicable standard of care, as well as how Defendants breached that standard. Plaintiffs further contend that they have made out a <u>prima</u> <u>facie</u> case for their remaining claims.

## II.   DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'"  <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)).  The court may not make credibility determinations or engage in any weighing of the evidence. <u>Anderson</u>, 477 U.S. at 255.

The showing required to establish that there is no genuine issue of material fact depends on whether the moving party bears the burden of proof at trial.  On claims for which the moving party does not bear the burden of proof at trial, the movant must point out to the district court "that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex</u>, 477 U.S. at 325.  In contrast, "[w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003)

(quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).

Once the moving party has satisfied its initial burden, the party opposing the motion must

establish the existence of a genuine issue as to a material fact.  Jersey Cent. Power & Light Co.

v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  "A nonmoving party has created a genuine

issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at

trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other

grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs

and Participating Emp'rs, 134 S. Ct. 773 (2014).  However, the party opposing the motion for

summary judgment cannot rest on mere allegations; instead, it must present actual evidence that

creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; see also Schoch

v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported

allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

**B.  Plaintiffs' Negligence Claim**

New Jersey law governs this action, and it requires a plaintiff who alleges medical

malpractice to present expert testimony that sets forth the applicable standard of care.  See Natale

v. Camden Cnty. Corr. Facility, 318 F.3d 575, 579 (3d Cir. 2003); see also Jackson v. Fauver,

334 F. Supp. 2d 697, 740 (D.N.J. 2004) ("To establish a prima facie case of negligence in a

medical malpractice action, a plaintiff must present expert testimony establishing: (1) an

applicable standard of care, (2) a deviation from this standard of care, (3) injury, and (4)

proximate causation between the breach and the injury.") (citing Teilhaber v. Greene, 727 A.2d

518 (N.J. App. Div.1999)), amended on reconsideration in part, No. 98-cv-2890 (WGB), 2005

WL 1677513 (D.N.J. June 29, 2005).

The New Jersey Supreme Court has explained the requirement as follows:

> In the usual negligence case, it is not necessary for the plaintiff to prove the standard of conduct violated by the defendant . . . . In the ordinary dental or medical malpractice case, however, the jury is not competent to supply the standard by which to measure the defendant's conduct. Since it has not the technical training necessary to determine the applicable standard of care, it cannot, without more, form a valid judgment as to whether the defendant's conduct was unreasonable under the circumstances. Therefore, ordinarily when a physician or dentist is charged with negligence in the treatment of a patient, the standard of practice to which he failed to adhere must be established by expert testimony.

> [Sanzari v. Rosenfeld, 167 A.2d 625, 628 (N.J. 1961)].

The Court in Sanzari went on to provide that "[i]n such cases, if the plaintiff does not advance expert testimony establishing an accepted standard of care, it is proper for the court to grant a dismissal at the close of plaintiff's case." Id.

On rare occasions, a plaintiff alleging professional negligence does not need to satisfy this requirement.  Under the common knowledge doctrine, expert testimony is not needed if "the issue of negligence is not related to technical matter peculiarly within the knowledge of the licensed practitioner . . . [most appropriately] where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Rosenberg by Rosenberg v. Cahill, 492 A.2d 371, 374 (N.J. 1985).  It is, however, "unusual" for that doctrine to apply in a professional malpractice case.  Id.; see also Estate of Chin, 160 N.J. 454, 469, 734 A.2d 778, 785 (1999) (citing same).

A claim for negligence in the physical therapy context, akin to the one brought by Plaintiffs here, appears to fall outside the parameters of the common knowledge doctrine, as it raises the same need for expert testimony as other malpractice actions.  A common juror would not know, for example, what precise level of care a physical therapist owes to a given patient,

particularly when one considers that each patient may have a different ailment, a unique course of physical therapy, and a correspondingly distinct supervisory need.  As applied here, rather than being "readily apparent" to the average person that Ms. Samson's actions were negligent, a juror would need expert input on what kind of supervision was appropriate under the circumstances.  Because Plaintiffs allege that Defendants failed to adhere to the standard of care that a professional physical therapist owes to a patient in Mrs. Russo's condition, the Court finds that Plaintiffs were indeed required to establish the applicable standard of care through expert testimony.[1]

Having determined that Plaintiffs had to produce expert testimony on the applicable standard of care, the Court must now decide whether Plaintiffs have done so.  The Court finds the requirement unmet, as Plaintiffs admit that their expert only "implied" the applicable standard -- rather than stating it and providing substantive legal authority to support it.

Plaintiffs submit the expert report of Mr. Stoneking.  He testified at his deposition that all of his opinions were contained within that report.  (Espey Cert., Ex. H, 37:5-10).  Significantly, the Court finds that nowhere in the report does Mr. Stoneking articulate what level of care Ms. Samson owed to Mrs. Russo.

---

[1] As additional support for this conclusion, the Court notes that at least in certain contexts, New Jersey legislation appears to group actions against licensed physical therapists for professional malpractice as akin to those against doctors and other professionals for malpractice.  See N.J.S.A. § 2A:53A-26(k).  Furthermore, some other jurisdictions have explicitly taken a similar stance.  Cf. Dorsey v. Relf, No. 4:12-cv-021-A, 2013 WL 791604, at *4 (N.D. Tex. Mar. 4, 2013) ("[T]he fact that plaintiff's claim is against a physical therapist rather than a physician does not alleviate the requirement to establish the relevant standard of care: under Texas law, a physical therapist malpractice action is treated exactly like a traditional physician malpractice action . . . . [P]laintiff was required to provide expert testimony concerning the degree of care which a physical therapist of ordinary prudence and skill would have exercised in the same or similar circumstances[.]"), aff'd, 559 F. App'x 401 (5th Cir. 2014), cert. denied, 135 S. Ct. 496 (2014).

As highlighted above, without that testimony, it is unclear whether Ms. Samson had a duty to, for example:  hold on to, stand near, or simply keep an eye on Mrs. Russo.  Based on evidence in the record, it is conceivable that direct supervision was not required at all.  Ms. Samson observed Mrs. Russo to be "ambulated by herself, fully independent"; and rather than take issue with that, Mr. Stoneking instead questioned the basis for the initial assessment that Mrs. Russo was at risk for falls.  (Espey Cert., Ex. F at 1, Ex. E at 41:19-21).   Indeed, Defendants' expert testified that a physical therapist can supervise an independent patient while simultaneously helping another.  (Espey Cert., Ex. G, 22:13-16).  In Defendants' statement of material facts -- which Plaintiffs did not contest[2] -- they recount that "[a]s of May 6, 2010, Anna Liza Samson determined that Plaintiff was no longer a fall risk, noting that 'she walks with no limp, unrestricted, fully able based upon the severity of pain over ten.'" (Docket Entry 31, Document 2, Par. 9).  These facts call for a professional judgment about what level of care Defendants owed to Mrs. Russo.

In the absence of any testimony explicitly providing that judgment, Plaintiffs are confined to arguing that Mr. Stoneking established the standard of care by implication.  See (Docket Entry 32, Page 7-8) ("Mr. Stoneking's report necessarily implies that supervision was necessary because Mrs. Russo had already been labeled a falls risk.") (emphasis added).  The Court does not agree, however, that any specific duty of professional care necessarily follows from Mr. Stoneking's observations.  Although Stoneking states that Ms. Samson's attention was "diverted" away from Mrs. Russo, he never asserts that uninterrupted or exclusive attention is required for an independent patient.  Consider the following:  a driver may "fail" to look both

---

[2] "[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted."  See L. Civ. R. 56.1; Bleistine v. Diocese of Trenton, 914 F. Supp. 2d 628, 636 (D.N.J. 2012) (citing same).

ways when driving through an intersection, but if that driver had a green light, that "failure" is legally insignificant.  Similarly, here, an expert's observation that a physical therapist did not do something does not necessarily imply that the law required them to do it.  That same fundamental flaw undermines Plaintiffs' claim about the lack of a safety bar near the step machine -- it has not explicitly been established that such a bar is required.

All told, although Plaintiffs provided expert testimony, they failed to provide expert testimony as to the standard of care.  Without that, Plaintiffs cannot demonstrate any deviation from that standard.  The negligence claim accordingly fails, and the Court will grant judgment in favor of Defendants.

### C.  Plaintiffs' Remaining Claims

In their Complaint, Plaintiffs assert three additional counts:  negligent misrepresentation; strict liability; and loss-of-services.  For the following reasons, the Court will grant summary judgment to Defendants on each.

Plaintiffs plead a theory of negligent misrepresentation. Under New Jersey law, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information." Karu v. Feldman, 574 A.2d 420, 425 (N.J. 1990).  A negligent misrepresentation is "[a]n incorrect statement, negligently made and justifiably relied on, [which] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance." Singer v. Beach Trading Co., 876 A.2d 885, 890-91 (N.J. App. Div. 2005) (internal citations and quotation marks omitted).  Plaintiffs allege that Defendants misrepresented that they would provide adequate care for Mrs. Russo.  This alleged statement could only be false if, in fact, Defendants failed to provide Mrs. Russo with adequate care; for the reasons discussed above, Plaintiffs have not demonstrated inadequate care.  Plaintiffs have not identified any other

allegedly false statements made by Defendants, nor any reliance and consequential loss suffered as a result of such statements.  The Court will accordingly grant summary judgment to Defendants on this count as well.

Plaintiffs also seek to recover under strict liability.  New Jersey does not generally apply strict liability to professionals providing medical care.  See Newmark v. Gimbel's Inc., 258 A.2d 697, 702 (N.J. 1969) (recounting decisions which held that "strict liability in tort doctrine was not applicable to the professional man, such as a dentist, because the essence of the relationship with his patient was the furnishing of professional skill and services."); Johnson v. Mountainside Hosp., 571 A.2d 318, 322 (N.J. App. Div. 1990) ("Our courts have refused to impose strict liability on health care providers.").  Plaintiffs have not addressed these cases, nor provided any authority whatsoever to support the application of strict liability under the circumstances. Defendants are therefore entitled to summary judgment on this claim.

Finally, Plaintiffs assert that if their negligence claim survives, they are entitled to recover under a theory of loss-of-services.  Because the negligence claim fails, so too does this per quod allegation.  Tichenor v. Santillo, 527 A.2d 78, 82 (N.J. App. Div. 1987) ("A per quod claim is only maintainable by reason of a spouse's personal injury. It depends upon and is incidental to the personal injury action.") (citing Rex v. Hutner, 140 A.2d 753 (N.J. 1958)).

## III.   CONCLUSION

For the reasons above, the Court finds that Defendants are entitled to summary judgment on all of Plaintiffs' claims.  An appropriate Order will be filed.


                             ____s/ Stanley R. Chesler____
                             STANLEY R. CHESLER
                             United States District Judge

Dated: May 6, 2015